My name is John Funk. I represent the appellant in this action. Knowing that the court has been briefed as to the facts of the case, I would like to focus my arguments on where the district court erred in granting summary judgment. May I ask you what the status of the case is with respect to the other defendants, just so we put this in context? It's my understanding that there are no other defendants in this case. No, I know not in this case, but is there a case proceeding against other defendants in the trial court, or do we know? It's settled. It's settled. Okay, very good. So this is the last piece of the puzzle in this action. Okay, that's correct. Thank you. The district court specifically erred in granting summary judgment based upon application of quasi-judicial immunity analysis as to Correction Officer Cunningham. The district court relied specifically on such cases as Sellers and Anderson v. Boyd. These cases are distinguishable from the facts at hand because both Sellers and Anderson are dealing with granting quasi-judicial immunity to parole boards and probation officers who are preparing pre-sentencing reports. Specifically in the facts at hand, Officer Cunningham was not acting in the capacities set forth in either Sellers or Anderson. Therefore, the court should not have applied or granted quasi-judicial immunity. The appropriate analysis that the district court should have applied is whether the appellee, Ms. Cunningham, who is seeking immunity, acted in an objectively reasonable manner using an analysis under Anderson v. Crichton. This is basically an Eighth Amendment analysis where there are clear questions of fact which do not warrant summary judgment. An Eighth Amendment analysis alleging deliberate indifference demonstrates a factual basis whereby Officer Cunningham was put on actual notice, not only by the decedent but the decedent's family members and the decedent's prominent attorney, Bill Terry, of Mr. White's serious medical condition and the necessity of the treatment. You have actual notice of a serious medical condition and the necessity of treatment. These come in the areas of phone calls and letters, attempts to obtain the appropriate diagnostics by Mr. White, and the failure to be able to receive the necessary medications. You then have willful blindness by Cunningham, which is analogous to the deliberate indifference. There are two other issues. Arguably, though, she's been put on notice is they were present during that time period. I'm specifically looking at the conduct where you have an attorney who is well aware of the situation where it appears that his client is not being able to have the issues addressed as far as his appearance goes, and he then attempts to intervene and make contact with the probation officer whereby he specifically places phone calls to her, and he sends her on two different occasions, on May 18th, a letter which she alleges she does not receive. But there's also the letter on May 28th. That's a disputed fact. Exactly, Your Honor. And this is part of the reasons why we believe that summary judgment is not appropriate here, is because there are issues, there are genuine issues of material fact regarding her... Her affidavit, you have an affidavit of the letter being sent, and you have another party with an affidavit that I didn't receive the letter until. Now, there's nothing there on that record that indicates that both parties aren't telling the truth. I mean, that happens. I get letters three or four days after they're mailed sometimes. And it's true, but here you have her testimony or deposition where she specifically states that she was well aware that Mr. Terry was attempting to contact her, but it was due to her alleged heavy caseload that she claimed that she wasn't able to return those phone calls. However, the most serious letters was the May 28th letter where he clearly states that he's in a precarious position here, given the medical problems that he has. She did not deliver him personally to the jail, right? No, but she is the one, again, if we look at it from a totality of the circumstances here, you have an intervening event that still does not, an intervening event does not... Now, once the jail had custody, isn't the jail responsible for his medical condition? It's our position that they are not, is that she still, as the probation officer... If the jail's not responsible for it, probably neither was she, was she? Arguably she is, because she is the one that Mr. Terry testified in his deposition that he believed that she was the one that had the authority to take him out of the jail setting in order to allow him to get the necessary medical treatment. You mean that the jail does not have the authority to put this person in an adequate medical position upon being informed of his condition? No, Your Honor, I'm not saying that. The problem is we have an individual that has information regarding a serious medical condition, which is Officer Cunningham, who fails to provide that information to the jail personnel after she's been given direct medical records by the attorney in this case. She's the one that set into motion the actions that place him into this position. Right, but I think here's the Eighth Amendment question from my point of view. Let's assume that she just has the medical records. Nobody's contacting her. I guess under your theory she would still have a duty to transmit it and it would rise to the level of an Eighth Amendment violation if she did, right? Let's assume that she took the medical records in the parking lot. Nothing else happens in the case. She just has them. Do you still think there's an Eighth Amendment violation? Well, arguably I think that the Eighth Amendment violation comes when there's the deliberate indifference for the failure to be able to investigate further regarding the medical condition. She's then placed on notice. Again, it falls back on. She's now been advised by not only the decedent and his wife about the medical condition, but she also does have a communication with the father who then advises her that he did have a fall which results in the skull fracture, but then she fails to follow through after she's been placed on the actual notice by the attorney that, look, this is the serious medical condition which you need to be addressing here. Well, typically she's not the custodial officer, though, at this point. What's your best case that says that somebody who's not the custodial officer in the prison can be held liable for an Eighth Amendment violation for failure to communicate medical information? As far as the best case, I'm trying to think. I don't really necessarily have a best case for dealing with a probation officer type scenario. Do you have any? I'm trying to think of, in my brief, what I may have. Well, that's the difficulty I have with this. I mean, I understand the factual theory of your case. With the legal theory, getting beyond immunity, which I question whether or not a grant of immunity was appropriate in this case, but once I get beyond that, it's hard to see a duty that would be triggered by the Eighth Amendment to a noncustodial officer who is the referring officer, because if we assume that, then under your theory, post-prosecutors, anyone else who sent the person to commit the person to jail, if they received information, would violate the Eighth Amendment if they didn't pass a law. Is that where we're reaching on this? Arguably, one of the violations here is just that there is the failure, when you have that custodial responsibility, and you've been placed on the actual notice, that you need to be able to make sure that you're complying with and meeting the needs of the individual inmates. I'd like to reserve if I may my remaining time. Good morning. My name is Susan Stewart. I'm a Deputy Attorney General for the State of Nevada, and I'm here this morning on behalf of Parole Officer Beverly Cunningham. Ms. Cunningham did absolutely nothing wrong when she took Mr. White into custody on May 28, 1998. She never disregarded any serious risk to his health or safety. She made a lawful, with probable cause, arrest, because Mr. White was in violation of the terms of his parole. She also did nothing wrong when she made arrangements to have him taken to the custody of the Clark County Detention Center. Clark County Detention Center had doctors, nurses, and other staff specifically charged with taking care of Mr. White. She was never deliberately indifferent to a serious risk to Mr. White's health or safety. Furthermore, it's specifically reasonable for her to expect that when he goes to jail, he will be taken care of. Now, in this case, as we previously discussed briefly, procedurally, Ms. Cunningham, she's the only defendant left in this case. The plaintiff and the appellant has settled with the medical providers at the Clark County Detention Center, and the other state defendants have been dismissed in this action. Now, I think, and I would respectfully request, that consistent with the dismissal of those other state defendants I'm sorry. You know what? That's terribly disruptive to me. Thank you. I'm sorry. Consistent with the dismissal of those other state defendants, I think it's entirely appropriate that the district court's grant of summary judgment in my client's favor should be affirmed. But we're not reviewing that. Pardon me? We're not reviewing that, the dismissal of the other state defendants. No, I understand that. I know you'd like to get your client out of this, and she's the last one in this case, but that's not the legal analysis of what applied here. But I think, right. I have difficulty with what the district court did on absolute immunity. It's hard for me to see how quasi-judicial immunity attaches to someone who refers for prosecution. She didn't take, she didn't arrest him herself. She referred for prosecution. She's not a judicial officer in that sense. It's difficult for me to understand the district court's theory on this. I understand your difficulty, Your Honor. I think especially in light of the fact that the Swift v. California case that incidentally did come down after Judge Doshin issued his decision. I would ask, though, that I think on this record there's not enough information to either affirm based upon Swift or deny based upon Swift, because we just don't have enough information on this record to distinguish the California's system of parole and probation versus the Nevada system. So do you want us to send it back for Judge Doshin? No, I don't want you to send it back. Well, that seems to be where you're at. What I want you to do. Assuming that we disagree with the district court. Yes. On the absolute immunity. Where does that leave us in this case? I think that that leaves you with several other grounds that were raised in front of the district court for you to affirm the grant of summary judgment in my client's favor, and that is qualified immunity. There is not a single case that says my client, a parole officer, has to make an inquiry into an individual's medical history before she arrests them. Now, there is a case that is cited in the appellant's brief, and that is the Gibson v. Washoe County case, and that is out of this circuit. And that case specifically held, there's a nurse that interviews an inmate when they come into the custody. That nurse absolutely should know if that inmate has a problem and needs medical treatment. But the police officers or the correctional officers that were restraining this individual, they're not medical doctors. There's no way that they know that there's an excessive risk to this inmate's health and safety. They're not trained in that way. So I would believe, based upon qualified immunity, the appellant has the burden to show where that law is clearly established, and I haven't been able to find it. What I have found are those cases cited in my brief from other circuits that say just the opposite. Police officers are not doctors, and they just don't have that information and are not required to make that determination. I also think that there's sufficient basis on the merits of the case itself. Deliberate indifference. On this record, she was never deliberately indifferent of a serious risk to his health and safety. She arrested him. He walked into her office. There's no question that she could look at him and say, he seems fine. She went and visited him the next day at the jail and tried to give him his due process. He refused to talk to her, and her testimony, which is undisputed, he was sitting in the jail cell and he looked fine. So based upon the merits of this case, I also think that the Court should affirm the district court's ruling, as well as the statute of limitations. I think there's a very strong argument that based upon the statute of limitations, her 1983 action is not timely, pursuant to the Nevada revised statute governing personal injury in Nevada. Any further questions? I think we understand your argument. All right. Thank you. Thank you very much. I appreciate your time this morning. Do you have a minute for rebuttal? It's important to note that there is no underlying crime that he was taken in for. It was violations of not reporting and absconding. The jail cannot release Mr. White. It was Mrs. Cunningham who was the one that could take him out of custody. Counsel states that they had no way of knowing regarding this medical condition. But, again, the May 28, 1998 letter states, please be advised it is imperative that you make sure that Mr. White receives the medication he is currently being prescribed. We read that. It's in the record. All right. But do you have anything you want to tell us about qualified immunity? We believe that that is the main issue and that the, as I stated previously. I didn't know you believed it because your time was running down and you hadn't mentioned it. That the district court, however, did err in granting qualified immunity. The district court granted absolute immunity. As to that they erred in granting as to quasi-judicial. Why shouldn't we look at qualified immunity? We believe that specifically going back to the information with the evidence that there are questions of fact, which shows that she acted, that she did not act objectively reasonable here, given the letters, given the information that she was being provided to, that we do have a serious medical condition. And that, therefore, by being able to have this information in front of her, is that she exercised willful blindness and chose not to act upon it. When you have a prominent attorney that says, we've got a life-threatening condition here. You need to respond. Those are questions of fact which I think that would warrant that summary judgment should not, that should be, that it should go back and have the matter heard in front of the jury. Did our CSOs check your health when you came in this morning? Pardon? Did our CSOs check your health when you came in this morning? I hope so. Thank you, counsel. The case assert will be submitted, and that will conclude our morning session.
judges: Farris, Beezer, Thomas